LLOYD N. JOHNSON,

        Plaintiff,

    v.

DR. THOMAS HARDING; DR. DAVID MACHERY;
DR. TONY THRASHER; STEVEN ELLISON;
PAMELA MEYERS; NII ADAMAH; ADE GEORGE;
KAREN RIMMER; REMEDICS AZCUETA; TANYA
CHIAPUSIO; PAUL SAEGER; LESLIE ROBERTS;
REBECCA BRAME; BARBARA BARNES; R.N. WILIK; and
R.N. KADRIDGE; MILWAUKEE COUNTY MENTAL
HEALTH COMPLEX MILWAUKEE DEPARTMENT OF
HEALTH AND HUMAN SERVICES; MILWAUKEE
COUNTY; and, WISCONSIN COUNTY MUTUAL
INSURANCE CORPORATION,

        Defendants.

Case No: 14-cv-1408

---

## FIRST AMENDED COMPLAINT

---

NOW COMES, Plaintiff Lloyd Johnson, by and through his attorneys, **JUDGE, LANG &**

**KATERS, LLC**, and **GENDE LAW OFFICE, S.C.**, and as for his First Amended Complaint for

relief against the above named Defendants, alleges and shows the Court as follows:

## I.    <u>INTRODUCTION</u>

1.    This case involves Milwaukee County, the Milwaukee County Department of Health

and Human Services ("DHHS"), the Milwaukee County Mental Health Complex ("MCMHC"),

and the individually named Defendants' methods of infringing on and violating the Constitutional,

Civil, and Statutory Rights of Plaintiff Lloyd Johnson, which were a substantial cause of his

injuries.   While under the Defendants care, Plaintiff was subjected to inadequate and

1

unconstitutional health care which involved the wanton and unnecessary infliction of pain, mental anguish and severe injuries.

2.	In late February of 2012, Plaintiff voluntary presented himself to the MCMHC seeking help with his serious mental illness and worsening symptoms, but was discharged by Defendant Thrasher the next day without proper care.   Less than three days after Plaintiff was discharged, Plaintiff was brought back to by the police in dire need of mental health care to combat his strong urges to self-mutilate.  While at MCMHC, Plaintiff subsequently severed his penis with a surgical scissors that was left in his room by Defendants on March 18, 2012, despite repeated notifications by Plaintiff to MCMHC Defendants that he was going to cut off his penis and, "finish the job." Plaintiff's mental condition was visibly deteriorating, but the Defendants ignored and were deliberately indifferent to these changes in Plaintiff's mental condition and his ultimate well-being and life, both on the date of his injuries and over a period of time.  Despite Plaintiff's deteriorating mental condition, the one-to-one safety directive was removed and a surgical scissors were left in Plaintiff's room by the staff at MCMHC which allowed, almost encouraged, Plaintiff to injure himself.

3.	At the time of Plaintiff's injuries, the MCMHC had a policy, whereby the treatment team would meet before a one-to-one safety directive could be removed from a patient.  The safety directive requires a three (3) day period of the patient's ability to not self-which would have to be evident to a medical professional before a one-to-one safety directive could be removed from a patient.  This policy was ignored by Defendants during their assessment, care, and treatment of Plaintiff and Plaintiff was taken off one-to-one for "budgetary" concerns and the lack of weekend staff at MCMHC.

4.	Following Plaintiff's tragic incident, Defendants failed to undertake a (a good faith) investigation to determine how a patient who is at risk for self-harm, in a secure facility, was able

2

to obtain a surgical scissors which he used to cut his penis off. Instead, Defendants attempted to cover up the critical facts by doing a half-hearted investigation in which they made generalized findings, and never determined which MCMHC staff member had control of the scissors used by Plaintiff, how Plaintiff came into possession of said scissors, or why Plaintiff was taken off of one-to-one observation.

5. Plaintiff brings this corrective action pursuant to Title 42 of the United States Code, Sections 1983 & 1985 for violations of Plaintiff's Fourteenth Amendment rights under the United States Constitution, the Wisconsin Constitution and Wisconsin Statutory Law.

## II.    JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and Laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiff's civil rights. This Court also has concurrent jurisdiction over the Plaintiff's State Law Claims.

## III.    VENUE

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because most Defendants reside in this district and because a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred in the district.

## IV.    PARTIES

8. The Plaintiff, Lloyd Johnson, is an adult citizen of the United States and a resident of the State of Wisconsin who was given access to a surgical scissors that were left in his room allowing him to cause injury to himself, while in the care, control and custody of DHHS at MCMHC located in Milwaukee, Wisconsin 53226, on March 18, 2012.

3

9.      Defendant Dr. Thomas Harding is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as the Internal Medical Director by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff.  Dr. Harding was one of the Medical Doctors assigned to Unit 43A on March 18, 2012 and was responsible for the health, safekeeping and welfare of Plaintiff during his stay at MCMHC.   Defendant Harding also participated in the Investigation and Report of Root Cause Analysis and Improvement Action Plan pertaining to the incident complained of in Plaintiff's Complaint.

10.     Defendant Dr. David Macherey is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Psychologist by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff.  Defendant Macherey was the Psychologist responsible for Plaintiff on March 18, 2012 and the days preceding March 18, 2012.   Defendant Macherey took Plaintiff off one-to-one supervision on March 16, 2012 and also participated in the Investigation and Report of Root Cause Analysis and Improvement Action Plan pertaining to the incident complained of in Plaintiff's Complaint.

11.     Defendant Dr. Tony Thrasher is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Medical Doctor by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff.  Dr. Thrasher was one of the Medical Doctors assigned to Unit 43A on March 18, 2012 and was responsible for the health, safekeeping and welfare of Plaintiff during his stay at MCMHC.  Defendant Thrasher was also the Medical Doctor who examined and allowed Plaintiff to be discharged on February 29, 2012 without proper treatment or care.

12.    Defendant Steven Ellison is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Nurse Manager by Milwaukee County at the MCMHC, and at all times material hereto, Defendant Ellison was responsible for the health, safekeeping and welfare of Plaintiff.  Defendant Ellison oversaw the nurses in Unit 43A at MCMHC and also participated in the Investigation and Report of Root Cause Analysis and Improvement Action Plan pertaining to the incident complained of in Plaintiff's Complaint.

13.    Defendant Pamela Myers is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Nurse Manager by Milwaukee County at the MCMHC, and at all times material hereto, Defendant Myers was responsible for the health, safekeeping and welfare of Plaintiff.  Defendant Myers oversaw the nurses at MCMHC and also participated in the Investigation and Report of Root Cause Analysis and Improvement Action Plan pertaining to the incident complained of in Plaintiff's Complaint.

14.    Defendant Nii Adamah Myers is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Certified Nursing Assistant by Milwaukee County at the MCMHC, and at all times material hereto, Defendant Myers was responsible for the health, safekeeping and welfare of Plaintiff.  Defendant Adamah was responsible for searching Plaintiff's room on March 18, 2012, for dangerous items and contraband.

15.    Defendant Ade George is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff.  Defendant George was one of the Registered Nurses assigned to Unit 43A on March 18, 2012 and was responsible for the health, safekeeping and welfare of Plaintiff during his stay at MCMHC.

16. Defendant Karen Rimmer is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Certified Nursing Assistant by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Rimmer was one of the Certified Nursing Assistants who conducted one-on-one observations of Plaintiff during times material hereto.

17. Defendant Remedios Azcueta is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Azcueta was one of the Registered Nurses assigned to Unit 43A on March 18, 2012 and was responsible for the health, safekeeping and welfare of Plaintiff during his stay at MCMHC.

18. Defendant Tanya Chiapusio is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Chiapusio was one of the Registered Nurses assigned to Unit 43A on March 18, 2012 and was responsible for the health, safekeeping and welfare of Plaintiff during his stay at MCMHC.

19. Defendant Paul Saeger is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff.[1] Defendant Saeger was one of the Registered Nurses assigned

---

[1] Defendant Paul Saeger was named in Plaintiff's Original Complaint as Defendant "R.N. Paonelaeger" because Plaintiff was unable to read Defendant Saeger's signature set forth in Plaintiff's medical records. (Docket No. 1, ¶ 23)

6

to Unit 43A while Plaintiff was at MCMHC and was responsible for the health, safekeeping and welfare of Plaintiff.

20. Defendant Leslie Roberts is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Roberts was one of the Registered Nurses assigned to Unit 43A while Plaintiff was at MCMHC and was responsible for the health, safekeeping and welfare of Plaintiff.[2]

21. Defendant Barbara Barnes is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Nurse Practitioner by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Barnes was assigned to Unit 43A while Plaintiff was at MCMHC and was responsible for the health, safekeeping and welfare of Plaintiff.

22. Defendant Rebecca Bramme is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Bramme was one of the Registered Nurses assigned to Unit 43A while Plaintiff was at MCMHC and was responsible for the health, safekeeping and welfare of Plaintiff.

23. Defendant R.N. Wilik (sic) is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health,

---

[2] Defendant Leslie Roberts was named is Plaintiff's Original Complaint as Defendant R.N. J. Roberts because Plaintiff was unable to fully read Defendant Roberts' signature set forth in Plaintiff's medical records. (Docket No. 1, ¶ 25)

safekeeping and welfare of Plaintiff. Defendant Wilik was one of the Registered Nurses assigned to Unit 43A while Plaintiff was at MCMHC and was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Wilik signs her name as follows:



24.    Defendant R.N. J. Kadridge (sic) is an adult citizen of the United States and a resident of the State of Wisconsin, who at all times material hereto was employed as a Registered Nurse by Milwaukee County at the MCMHC, and at all times material hereto was responsible for the health, safekeeping and welfare of Plaintiff. Defendant Kadridge was one of the Registered Nurses assigned to Unit 43A while Plaintiff was at MCMHC and was responsible for the health, safekeeping and welfare of Plaintiff. Kadridge signs her name as follows:

25.    Defendant Milwaukee County Mental Health Complex ("MCMHC") is a facility located at 9201 W. Watertown Plank Road, Milwaukee Wisconsin 53226 and is a health care provider organized and operated in this state and under the laws of the State of Wisconsin for the purposes of providing mental health services to patients by physicians and other mental health care providers in Milwaukee County, and is responsible for the acts of negligence and constitutional violations of its employees and agents involved in health care services to patients treated therein. At all times relevant hereto, Defendant Milwaukee County Mental Health Complex was operated by the County of Milwaukee and was responsible for the health, safekeeping and welfare of Plaintiff.

26.    Defendant Milwaukee County Department of Health and Human Services ("DHHS") is a Milwaukee County Department responsible for providing a wide range of mental health and

Case 2:14-cv-01088-LA Filed 07/25/16 Page 8 of 25 Document 54

life-saving services to children and adults of Milwaukee County with offices located at 1220 W. Vliet Street, Milwaukee, Wisconsin 53205. At all times relevant hereto, Defendant Milwaukee County Department of Health and Human services was responsible for the health, safekeeping and welfare of Plaintiff.

27. Defendant Milwaukee County, with offices of its executive at 901 N. 9th Street, Suite 306, Milwaukee, Wisconsin 53233, and offices of its Corporate Counsel, Paul Bagren, located at 901 N. 9th Street, Suite 303, Milwaukee, Wisconsin 53233. At all times material hereto, Milwaukee County was a Municipal Corporation organized under the laws of the State of Wisconsin and was at all times responsible for training and supervising the employees of the Milwaukee County Mental Health Complex and Milwaukee County Department of Health and Human Services, and for the implementation of policies and procedures of the MCMHC and DHHS.

28. Defendant Wisconsin County Mutual Insurance Incorporation ("Wisconsin County Mutual"), is a domestic insurance company whose registered agent for service of process is Aegis Corporation, 18550 W. Capitol Drive, Brookfield, WI 53045, and is primarily engaged in the business of insurance. At all times material hereto, Wisconsin County Mutual provided insurance to Milwaukee County and Milwaukee County employees, agents, officers, and/or representatives, insuring against liability imposed by law arising out of negligent conduct and/or constitutional violations and further insuring the Defendants against any damages they might be liable to others by virtue of the negligent conduct and/or constitutional violations; that said policy or policies of insurance were in full force and effect at the time of the incidents that are the subject of this lawsuit; that in said contract(s) of insurance, Wisconsin County Mutual reserved the right to settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a direct interest in this litigation; that by virtue of the laws of the State of Wisconsin, Wis. Stat. § 803.04(2)(a), Wisconsin County Mutual is a proper defendant herein.

29.     All of the Defendants are sued in their individual and official capacities. At all relevant times, all Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of the County of Milwaukee; within the scope of their employment as representatives of public entities and were deliberately indifferent to the Constitutional and Statutory rights of Plaintiff.

## V.     FACTS

30.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

31.     In July of 2011, Plaintiff twice presented to MCMHC. Plaintiff was admitted with short stays and then returned home both times.

32.     On February 28, 2012, Plaintiff voluntarily presented himself at MCMHC where he was admitted to the Observation Unit for depression, suicidal ideations, paranoia, auditory hallucinations, delusions of guilt, shame, and other psychotic symptoms.

33.     On February 29, 2012, Plaintiff was subsequently medically cleared by Defendant Thrasher and discharged from MCMHC, less than one day after being admitted, after receiving little to no treatment despite his severe mental illness and psychotic symptoms.

34.     On March 3, 2012, approximately 60 hours after being discharged from MCMHC, Plaintiff used a scissors to sever both of his testicles and earlobes, as well as cut his penis. Plaintiff was subsequently taken to Froedert Memorial Lutheran ("Froedert") for medical treatment for these injuries.

35.     Plaintiff remained at Froedert for five days until March 8, 2012.

36.     On March 8, 2012 at 11:14 p.m., Plaintiff was transferred by police from Froedert to MCMHC because he was psychotic at the time and had severed his testicles, earlobes, cut his penis with a sharp scissors, and then laid in the snow days earlier.

10

37. On the Nursing Assessment Information Sheet dated March 8, 2012, R.N. Joy Pries recorded that Plaintiff was vulnerable. Under Alerts – Other Care Considerations – Date Identified 10/11/12, Pries recorded, "Patient has a history of impulsive acts of self-harm including cutting off penis with scissors while inpatient at BHD." Pries recommendation was, "Needs to be careful for dangerous items. Evaluate need for 1:1 monitoring to prevent serious self-harm." Pries also noted that Plaintiff was a risk for Self-Mutilation.

38. That when Plaintiff arrived from Froedert on March 8, 2012, Plaintiff was placed on a one-to-one observation level by Defendant Thrasher, who authored a memo, which stated, "Please place on one to one and in own room with I&O [Input & Output]."

39. The MCMHC Face Sheet states that Plaintiff's admit date was March 9, 2012, and describes Plaintiff's diagnoses as unspecified psychosis.

40. On March 9, 2012, Defendant Macherey met with Plaintiff and recorded, "[Patient] has given several explanations for his behavior to various people, all of which are delusional. . . [Patient] remains a significant risk for self-harm."

41. On March 9, 2012, Plaintiff underwent a mental status examination where it was determined he was a high risk of self-harm to himself.

42. On March 9, 2012, Plaintiff's risk estimate for self-harm was high and Plaintiff was on one-to-one observation at all times.

43. On March 10, 2012, Defendant Barnes noted the Plaintiff was given medications, "for continued feelings of self-harm." Plaintiff showed R.N. Barnes his penis and R.N. Barnes reported that Plaintiff had a "continued urge to mutilate himself."

44. On March 11, 2012, Defendant. Barnes directly asked Plaintiff if he still had an urge to remove his penis, and Plaintiff responded, "yes."

45. On March 12, 2012, MCMHC staff recorded that Plaintiff was unable to consent to treatment because he was "unable to comprehend due to illness."

46. On March 12, 2012, Plaintiff was examined by Defendant Macherey who recorded, "[Johnson] remains in need of 1:1 as recently as FRI (sic) he attempted to get ahold of a piece of metal and put this down his pants to 'finish the job."

47. On March 13, 2012, Plaintiff was examined by Defendant Macherey, who recorded, "[Patient] continues to report intermittent thoughts of removing his genitals. . . . will [continue behavioral] 1:1 due to intermittent thoughts of self mutilation."

48. That on March 14, 2012, Plaintiff was examined by Defendant Macherey, who recorded, "[Johnson] is still talking about 'finishing the job' a phrase he has been using to refer to his genetilia. Will continue [Behavioral one on one] for this."

49. On March 15, 2012, Defendant Macherey ordered that Plaintiff "[continue Behavioral 1:1] for self-mutilating behavior."

50. On March 15, 2012, Defendant Macherey ordered, "[Discontinue Behavioral 1:1] for self-mutilating behavior, Patient appropriate."

51. On March 15, 2012, Plaintiff was taken off one-to-one observation by Defendant Macherey despite the lack of three days, or any number of days, in which Plaintiff did not have thoughts of self-harm or behaved in a manner which demonstrated he was not still at risk for self-harm.

52. When Plaintiff was taken off one-to-one observation, several MCMHC nursing staff members had serious concerns because Plaintiff was still experiencing thoughts of self-harm, but these concerns were ignored and Plaintiff was taken of one-to-one observation because of the lack of staff at MCMHC for the weekend shifts, as well as budgetary concerns.

53.     That on March 18, 2012, Plaintiff had his wound dressing changed at three separate times in Plaintiff's room by Defendant Barnes, Defendant Brame, and Defendant George, despite the fact that MCMHC policy requires that these procedures be conducted in an examination room.

54.     That on March 18, 2012, while Plaintiff was not on one-to-one observation, he was given access to a surgical scissors – a surgical scissors left in his room - at which time he severed his penis.

55.     That on March 18, 2012, while a patient at MCMHC in 43A, Plaintiff "cut of his penis w/a bandage scissors."  "[Johnson] stated he severed his penis [because] he feels badly about himself.  He stated he found the scissors in the bathroom and does not know its origin."

56.     That on March 18, 2012, Dr. Syed Waliuddin recorded, "Code 4 was called after [Johnson] walked up to the nursing desk *returning* the scissors."

57.     The Nurse Assessment Information Sheet dated March 19, 2012, indicated that Plaintiff had a history of self-injury, and had used Anton Moffett as an alias; it was recommended that staff "Be aware of history.  Place on 1:1 until evaluated by inpatient."  Defendants knew this information prior to and on March 18, 2012.

58.     The Nurse Assessment Information Sheet indicated that on March 19, 2012, "Johnson had a history of cutting his genitalia with a scissors."  Defendants were aware of this information prior to and on March 18, 2012.

59.     That when Plaintiff was returned to MCMHC from Froedtert Hospital following the March 18th incident, he reported to staff that if not for the voices and the availability of the scissors he would not have done it.  Plaintiff explained that he could not remember most of the incident and staff determined that he was disassociated during the incident.  Plaintiff remained on one to one supervision until August 27, 2012, after his return to the MCMHC.

13

60. Following the March 18, 2012, incident, Defendants made no attempt to determine how Plaintiff was able to get a scissors or why he was taken off of one to one monitoring while he was still having thoughts of self-harm.

61. Instead, Defendants' review/investigation was conducted for the purpose of covering up the facts behind Defendants' failures including as to how a surgical scissors was left in Plaintiff's room and why Plaintiff was taken off one-to-one despite his known, obvious desires to cut his penis off.

## VI. VIOLATIONS OF LAW

### COUNT I
### Unconstitutionally Inadequate Mental Health Care/Treatment And Conspiracy To Cover Up The Same In Violation Of The Fourteenth Amendment To The United States Constitution Against All Defendants

62. Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

63. That Defendants' deliberate indifference to Plaintiff's serious medical and mental health condition and failure to provide adequate mental health care and failure to provide adequate medication control was a substantial cause of Plaintiff 's avoidable pain, injuries and subsequent severing of his penis.

64. That Defendants' policies, practices, procedures, customs, acts, and/or omissions evidence and constitute deliberate indifference to the serious mental health care needs of Plaintiff and violated the Fourteenth Amendment to the Unites States Constitution.

65. That Defendants' policies, practices, procedures, customs, acts, and/or omissions placed Plaintiff at an unreasonable, continuing and foreseeable risk of developing and/or exacerbating his ailments, which was a substantial cause of his injuries, including severing of his penis.

66. That Defendants' policies, practices, procedures, customs, acts, and/or omissions following the incident in which Plaintiff severed his penis on March 18, 2012, violated Plaintiff's rights as protected by the United States Constitution and 42 U.S.C. § 1983.

67. That Defendants, Milwaukee County, MCMHC, and DHHS, including the personnel identified above, violated Plaintiff's rights as protected by the United States Constitution and 42 U.S.C. § 1983, by conspiring to conceal/cover-up the circumstances of Plaintiff's injuries. Further, the Defendants were deliberately indifferent by failing to determine the ultimate cause of the failures that lead to Plaintiff's injuries.

68. "Allegations of a conspiracy may form the basis of a 42 U.S.C. § 1983 claim." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); Chimera v. Lockhart, 2011 WL 2560286 (E.D. Okla. 2011).

69. That as a direct and proximate result of Defendants' unconstitutional policies, practices, procedures, customs, acts, and/or omissions, Plaintiff unnecessarily suffered physical, psychological, and emotional injury, and eventually severed his penis. Plaintiff can no longer have children and endured the pain and suffering of several surgeries to mitigate his injuries and damages.

70. That as a direct and proximate cause of the aforementioned Defendants' actions mentioned herein, and the perpetrating of a conspiracy to cover up the unconstitutional treatment suffered by Plaintiff, said Defendants are liable for their actions pursuant to § 1983.

## COUNT II
### Negligence:
**Against Defendants Harding, Macherey, Thrasher, Rimmer, Azcuteta, Chiapusio, Saeger, Roberts, Wilik, Kadridge, MCMHC, DHHS, and Milwaukee County**

71. Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

15

72.     That the Defendants were negligent at all times material hereto in that they, among other things, failed to properly monitor, observe, watch or have a staff person, doctor, or nurse present while Plaintiff was in his room in a psychotic mental state, hearing voices and having thoughts to harm himself. Defendants were further negligent by allowing a surgical scissors to be present in Plaintiff's room or by leaving a surgical scissors in Plaintiff's room while he was in this psychotic mental state, wanting to self-harm himself. All Defendants were otherwise negligent in allowing Plaintiff to sever his penis, genitals and earlobes.

73.     Defendants were further negligent by allowing Plaintiff to be discharged from MCMHC on February 29, 2016, just one day after he had been brought into MCMHC for depression, suicidal ideations, paranoia, delusions of guilt, shame, and other severe psychotic symptoms.

74.     That the negligence of the Defendants was a direct and proximate cause of the injuries and damages Plaintiff suffered and continu3es to suffer.

## COUNT III
### Res Ipsa Loquitur:
### Against Defendants Harding, Macherey, Thrasher, Rimmer, Azcueta, Chiapusio, Saeger, Roberts, Wilik, Kadridge, MCMHC, DHHS, and Milwaukee County

75.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

76.     As alleged herein, on March 18, 2012, Plaintiff was a patient at MCMHC for the purpose of treating his mental illness and psychotic symptoms. The Defendants are presumed to be negligent because:

    i.  The severing of Plaintiff's penis with a surgical scissors at MCMHC would not ordinarily have occurred unless Defendants were negligent; and,

    ii. The surgical scissors that Plaintiff used to sever his penis were scissors that were in the exclusive control of Defendants.

16

77.     That the negligence of the Defendants was a direct and proximate cause of the injuries and damages Plaintiff suffered.

## COUNT IV
### Cruel and Unusual Punishment in Violation of Section 6 of the State of Wisconsin Constitution

78.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

79.     The Defendants' policies, practices, procedures, customs, acts, and/or omissions evidence and constitute a deliberate indifference to Plaintiff's known propensity for self-harm in failing to monitor, observe or watch Plaintiff and leaving a dangerous medical instrument in his presence.  Defendants' deliberate indifference was a substantial cause of Plaintiff's avoidable pain, suffering, and the severing of his penis.

80.     The Defendants' policies, practices, procedures, customs, acts, and/or omissions placed Plaintiff at an unreasonable, continuing and foreseeable risk of harming himself, which eventually led to the severing of his penis, genitals and earlobes.

81.     That as a proximate result of Defendants' unconstitutional policies, practices, procedures, customs, acts, and/or omissions, Plaintiff unnecessarily suffered physical, psychological and emotional injury, and eventually lost his penis, genitals and earlobes

## COUNT V
### Monell Liability
*A.  Failure to Train and Adequately Supervise – Milwaukee County, Milwaukee County Department of Health and Human Services, and Milwaukee Mental Health Complex*

82.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

83.     That the Defendants failed to adequately train MCMHC staff and employees at all times relevant to this complaint, on how to deal with patients who have done self-harm to oneself or threatened to do self-harm to oneself; on how to monitor, watch, observe, define schedules,

17

administer and/or distribute medication to patients with these issues; how to document one-to-one observations; and, how the patient is acting, reacting to said treatment and how to protect individuals threatening self-harm from themselves.

84.     That the failure of the Defendants to adequately train and supervise MCMHC employees, staff, nurses and doctors concerning several key issues such as: monitoring a mentally ill person threating self-harm, and conducting of one-to-one observation of patients threatening self-harm, demonstrate a deliberate indifference on the part of these Defendants as whether the failure to adequately train and supervise its MHMC staff and employees would result in the violation of the Constitution, Civil and Statutory rights of Plaintiff.

85.     That the above mentioned failure to adequately train and supervise MCMHC employees was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory Rights of Plaintiff.

86.     That the above mentioned failure to adequately train and supervise MCMHC employees, and the acts and omissions of these defendants, was a direct and proximate cause of the injuries and damages suffered by Plaintiff.

B.     *Policies and Customs of Taking Patients off One-To-One Observation in Violation Of Defendant's Policy Due To Budgetary Concerns and Weekend Staffing Levels - Milwaukee County, Milwaukee County Department of Health and Human Services, and Milwaukee Mental Health Complex*

87.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

88.     The actions of the Defendants, their employees, staff, and/or agents, including removing patients from one-to-one observation who were admitted to MCMHC with injuries sustained from self-harm, patients who assessed as a high risk to self-harm, and who are clearly suffering from psychotic symptoms because of budgetary concerns were done in accordance with Defendants' de facto policy, decision or custom condoning the removal of said patients from one-

18

to-one observation because of budgetary concerns and weekend staffing levels.. That these de facto policies were officially adopted, expressly or implicitly and promulgated or practiced by the Defendants, even though such custom may not have received written formal approval by the Defendants, and even though such de facto policies were inconsistent with or violated written policies.

89.     That this official or de facto policy and/or custom of removing patients from one-to-one observation who were admitted to MCMHC with injuries sustained from self-harm, who are assessed as a high risk to self-harm again, and who are clearly suffering from psychotic symptoms because of budgetary concerns, violated Plaintiff's Constitutional, Civil, and Statutory Rights and permitted, encouraged, tolerated, or ratified the actions of the Defendants, MCMHC staff, all in a malicious or reckless disregard or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Plaintiff.

90.     That the above-mentioned official or de facto policy and/or custom of removing patients from one-to-one observation who were admitted to MCMHC with injuries sustained from self-harm, who are assessed as a high risk to self-harm again, and who are clearly suffering from psychotic symptoms because of budgetary concerns, violated Plaintiff's Constitutional, Civil, and/or Statutory Rights, which arose or were allowed to continue as a result of, among other things, the following acts and omissions of the Defendants: failing to adequately train, supervise and control its employees; failing to provide adequate training on how to deal with patients at high risk for self-harm.

91.     That the widespread practice of ignoring patients at high risk for self-harm and removing them from one-to-one observations or discharging them for budgetary concerns and weekend staffing levels, which violates patients, like Plaintiff's, Constitutional, Civil, and/or

19

Statutory Rights constitutes a custom or usage that, although not officially authorized, reflects practices which were so well settled that they virtually constituted official policy.

92.    That the Defendants had actual and/or constructive knowledge of the above-mentioned policy and were deliberately indifferent as to whether said policies and customs would change.

93.    That the above-mentioned policies and customs were a direct and proximate cause of the violations of Plaintiff's Constitutional, Civil and Statutory Rights, which eventually lead to Plaintiff's severing his penis, genitals, and earlobes.

94.    That the above-mentioned policies and customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Plaintiff.

C.    _No Policy In Place as to how Sharp Items were to be Handled and/or Accounted For - Milwaukee County, DHHS, and MCMHC_

95.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

96.    Defendants failed to formulate and execute a policy regarding the Defendants' staff's handling and accounting of sharp items, such as scissors, and discipline those who had been found to have mishandled or not accounted for sharp items.

97.    The Defendants' policy of failing to formulate and execute a policy of how sharp items, such as scissors, authorized and created a culture of deliberate indifference to the MCMHC patients, which became a de facto policy of Defendants.

98.    The Defendants' policy of failing to formulate and execute a policy of how sharp items, such as scissors, authorized and created a culture of deliberate indifference to the MCMHC patients, which lead to a de facto policy of MCMHC staff not being held accountable for their failure to properly handle and account for sharp items which pose a serious risk to the MCMHC patients.

99.     That these above-mentioned de facto policies of Defendants constitute deliberate indifference against patients at MCMHC, these de facto policies created an environment which would allow MCMHC staff to mishandle and not account for sharp items and were factors that were significant and causal in the injuries and damages sustained by Plaintiff.

100.    That the Defendants had actual and/or constructive knowledge of the above-mentioned policy and were deliberately indifferent as to whether said policies and customs would change.

101.    That the above-mentioned policies and customs were a direct and proximate cause of the violations of Plaintiff's Constitutional, Civil and Statutory Rights, which eventually lead to Plaintiff's severing his penis, genitals, and earlobes.

102.    That the above-mentioned policies and customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Plaintiff.

D.   *Policies and Customs of Conducting Critical Incident Investigations and Reviews for Purposes of Concealing Defendants Failures and Liability*

103.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

104.    The actions of the Defendants, their employees, staff, and/or agents, of not conducting a meaningful and thorough investigation after a critical incident took place, and failing determine who was at fault for the critical incident, were done in accordance with Defendants' de facto policy, decision or custom condoning the concealment/covering-up of Defendants actions. That these de facto policies were officially adopted, expressly or implicitly and promulgated or practiced by the Defendants, even though such custom may not have received written formal approval by the Defendants, and even though such de facto policies were inconsistent with or violated written policies.

105.     That this official or de facto policy and/or custom of not conducting a meaningful and thorough investigation after a critical incident took place, and failing determine who was at fault for the critical incident, violated Plaintiff's Constitutional, Civil, and Statutory Rights and permitted, encouraged, tolerated, or ratified the actions of the Defendants, MCMHC staff, all in a malicious or reckless disregard or with deliberate indifference regarding the Constitutional, Civil, and Statutory Rights of Plaintiff.

106.     That the above-mentioned official or de facto policy and/or custom of not conducting a meaningful and thorough investigation after a critical incident took place, and failing determine who was at fault for the critical incident, violated Plaintiff's Constitutional, Civil, and/or Statutory Rights, which arose or were allowed to continue as a result of, among other things, the following acts and omissions of the Defendants: failing to adequately train, supervise and control its employees; failing to provide adequate training on how to conduct thorough investigations.

107.     That the widespread practice of not conducting a meaningful and thorough investigation after a critical incident took place, and failing determine who was at fault for the critical incident, which violates patients, like Plaintiff's, Constitutional, Civil, and/or Statutory Rights constitutes a custom or usage that, although not officially authorized, reflects practices which were so well settled that they virtually constituted official policy.

108.     That the Defendants had actual and/or constructive knowledge of the above-mentioned policy and were deliberately indifferent as to whether said policies and customs would change.

109.     That the above-mentioned policies and customs were a direct and proximate cause of the violations of Plaintiff's Constitutional, Civil and Statutory Rights.

110.     That the above-mentioned policies and customs, as well as the acts and omissions of the Defendants were a direct and proximate cause of the injuries and damages suffered by Plaintiff.

## COUNT VI
### Safe Place Violation:
### Against Defendants Harding, Macherey, Thrasher, Rimmer, Azcueta, Chiapusio, Saeger, Roberts, Wilik, Kadridge, MCMHC, DHHS, and Milwaukee County

111.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

112.    That at all times material hereto, Plaintiff was a frequenter entitled to be on the premises where this incident occurred.

113.    That the premises where Plaintiff was injured was a public building and a place of employment within the meaning of Wis. Stat. § 101.11, and that Defendants, individually, and/or through their agents, servants and/or employees, had a duty pursuant to the statute to furnish and use safety devices and safeguards; to adopt and use methods and processes reasonably adequate to render the premises as safe as its nature reasonably permitted; to construct, repair and maintain said premises, so as to render it safe and to do every other thing reasonably necessary to protect the life, health, safety and welfare of Plaintiff.

114.    That the Defendants, individually, and/or through their agents, servants and/or employees, negligently failed to make said premises as safe as its nature reasonably permitted as required by Wis. Stat. § 101.11, and were otherwise negligent.

115.    The negligence of the Defendants, individually, and/or through their agents, servants and/or employees, in the failure to make said premises as safe as its nature reasonably permitted, as alleged, was a cause of the injuries and damages sustained by Plaintiff.

### VII.    DAMAGES

116.    Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

117.    That as a direct result of the unlawful acts of the Defendants, Plaintiff unnecessarily suffered serious emotional and psychological distress, pain and suffering, permanent physical

23

and mental injury, loss of future enjoyment of life, loss of companionship with his family, and loss of the ability to have children or procreate; therefore Plaintiff is entitled to monetary damages in an amount to be determined fair and just by the Court.

## VIII.  <u>CONDITIONS PRECEDENT</u>

118.     Plaintiff re-alleges and incorporates herein by reference the allegations of the preceding paragraphs.

119.     All conditions precedent to this lawsuit within the meaning of Rule 9(c) of the Federal Rules of Civil Procedure have been performed or have otherwise occurred.

## IX.     <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, the Plaintiff respectfully requests the following judgment:

    a. Awarding compensatory damages in an amount determined by the Jury;

    b. Awarding punitive damages in an amount determined fair and just by the Jury against the individually named Defendants;

    c. Awarding the reasonable costs and expenses of this corrective action including a reasonable attorney's fee and their out-of-pocket expenses; and,

    d. Granting Plaintiff such other and further relief as may be fair and just.

120.     That Milwaukee County is liable pursuant to Wis. Stat. §895.46 for payment of any judgment entered against the Defendants in this corrective action because said Defendants were acting within the scope of their employment when they committed the above-mentioned unconstitutional and negligent actions.

## X.     <u>DEMAND FOR JURY TRIAL</u>

121.     The plaintiff demands trial by jury.

Dated at Wauwatosa, Wisconsin this 25th day of July, 2016.

Respectfully Submitted,

 s/ David J. Lang
David J. Lang
Jason S. Jankowski
JUDGE, LANG & KATERS, LLC
8112 West Bluemound Road, Suite 101
Wauwatosa, WI 53213
(414) 777-0778  Phone
(414) 777-0776  Fax

Attorneys for Plaintiff Lloyd Johnson